**SO ORDERED.**

**SIGNED this 29 day of January, 2008.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

PATRICIA THOMAS SHERWOOD,

    DEBTOR.                                      CASE NO. 07-02809-8-JRL
                                                    Chapter 13

_____

**ORDER**

This case is before the court on the debtor's objection to the proof of claim filed by Capital One Auto Finance (Capital One) and on the debtor's motion for confirmation of the proposed Chapter 13 plan. On January 8, 2008, the court conducted a hearing on this matter in New Bern, North Carolina.

**BACKGROUND**

On October 23, 2006, the debtor executed and delivered to Riverside Chrysler-Jeep-Dodge (Riverside) a Retail Installment Sale Contract in the original sum of $25,340.58[1] in order to finance the purchase of a 2006 PT Cruiser. The debtor granted to Riverside a lien on the 2006

---

[1] The court remains unable to compute the total amount financed based on the evidence provided by the parties. However the court is spared the necessity of doing so because the parties agree that the total amount financed is $25,340.58.

PT Cruiser. Capital One is the assignee and beneficiary in interest of the contract. On August 1, 2007, the debtor filed a Chapter 13 bankruptcy petition. The filing was within 910 days of the debtor's purchase of the 2006 PT Cruiser. On August 7, 2007, Capital One filed a proof of claim in the amount of $24,149.00, which Capital One claims is fully secured. On September 14, 2007, the debtor filed a motion for confirmation of his Chapter 13 plan. The debtor's proposed Chapter 13 plan attempts to cramdown Capital One's claim and bifurcates the claim by treating $13,850,00 as a secured claim and $10,279.00 as an unsecured claim, to be paid over the life of the plan at 10.25% interest. On October 8, 2007, Capital One filed an objection to the proposed plan, arguing that the debtor should not be permitted to cramdown Capital One's claim. On December 5, 2007, the debtor objected to Capital One's proof of claim on the grounds that Capital One does not have a secured claim of $24,149.00. Capital One responded to the objection by asserting that the following charges were included as part of the financing of the vehicle: (1) the sales price of $22,286.35, (2) a trade-in with a negative value of $4,311.23, (3) a charge for a prior lease with a balance of $1,061.23, (4) an extended warranty in the amount of $1,050.00, (5) insurance in the amount of $499.00, and (6) other fees and costs totaling $440.00. In addition to financing, the debtor provided $250.00 in cash and contribution from a rebate of $3,000.00. The issue to be determined by the court is what amounts may be allocated to the secured claim of Capital One under the ruling of the District Court for the Eastern District of North Carolina in In re Price, No. 5:07-CV-133-BR (E.D.N.C. Nov. 14, 2007).

## ANALYSIS

Section 506 of the Bankruptcy Code provides that claims of creditors are treated as secured to the extent of the value of the property and as unsecured to the extent that the value is

less than the amount of the allowed claim.  11 U.S.C. § 506(a).  However, Section 1325 provides that Section 506 shall not apply to a claim "if the creditor had a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for personal use of the debtor[.]"  This provision in Section 1325 is known as the "hanging paragraph" and has been the subject of disagreement among bankruptcy courts.  Specifically, courts have differed on what charges may be included as part of the purchase price of the vehicle, the effect of non-purchase money charges on the characterization of the transaction as purchase money, and on the allocation of pre-petition payments to the purchase money and non-purchase money portions of the claim.

*a. Purchase Money Security Interest Under The Rule of <u>Price</u>*

The court must first determine what charges are included as part of the purchase money security interest.  The North Carolina General Statutes define purchase money obligation as "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used."  N.C. Gen. Stat. § 25-9-103.  North Carolina law further provides that the term "price" of collateral is expansive and includes "expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations."  N.C. Gen. Stat. § 25-9-103 (official comment 3).  Therefore, routine transactional costs are generally considered part of the "price" of the collateral and are thus part of the purchase money obligation.  Following the enactment of the "hanging paragraph," there

3

was substantial disagreement among bankruptcy courts regarding the inclusion of negative equity as part of the purchase price of a vehicle under North Carolina law. However, in <u>In re Price</u>, No. 5:07-CV-133-BR (E.D.N.C. Nov. 14, 2007), the District Court for the Eastern District of North Carolina specifically concluded that negative equity does not come within the definition of "purchase money obligation" and thus cannot be considered part of the purchase money security interest.

In this case, Capital One asserts that the following charges included in the amount financed under the sales contract should be treated as non-purchase money: (1) $499.00 for insurance, (2) $1,061.23 charge for a prior lease, (3) $4,311.23 in negative equity from a trade-in, and (4) $1,050.00 for an extended warranty. Unable to reconcile the figures submitted by the parties,[2] this court entered an order on January 14, 2008, requesting that the parties file the original financing statement underlying the transaction between the debtor and Capital One. However, rather than submitting the financing statement, Capital One provided a document entitled Vehicle Buyer's Order. The charges listed on the Vehicle Buyer's Order are as follows: (1) selling price of $22,045.00, (2) negative equity from a trade-in of $4,311.23, (3) state and local taxes of $241.00, (4) a license transfer and registration charge of $55.00, and (5) an administrative service fee of $389.00. Subtracted from these charges were a factory rebate of $3,000.00 and $250.00 in cash provided by the debtor. The balance due on delivery listed on the Vehicle Buyer's Order was $23,791.58.

The charges for taxes, license and registration fee, and administrative fee are routine

---

[2] Particularly perplexing is why, in the same transaction, there would be both negative equity from a trade-in and a charge for a prior lease.

costs that clearly fall within the definition of "price" of collateral under North Carolina law and are thus part of the purchase money obligation. The issue, however, arises with Capital One's characterization of charges for insurance, a prior lease, and an extended warranty as non-purchase money. The Vehicle Buyer's Order is the only evidence of the transaction submitted by the parties. Applying the definition of "price" to this document, it is clear that the selling price of $22,045.00, the State and Local Tax of $241.35, the License Transfer and Registration of $55.00, and the Administrative Service Fee of $389.00 may be included as part of the purchase money security interest. However, this computation is not complete without accounting for the negative equity reflected on the Order.

Negative equity is created when a buyer owes more on a traded-in vehicle than he receives from the trade-in allowance. In the instant case, the debtor received a $14,000.00 trade-in allowance from Riverside. Because the debtor owed $18,311.23 on the trade-in, the trade resulted in $4,311.23 of negative equity. However, the debtor reduced this amount by application of a $3000.00 rebate and a cash payment of $250.00. Thus the negative equity reflected in the amount paid to the dealer which must be subtracted from the Balance Due on Delivery of $23,791.58 is $1,061.23. Under the rule of Price, the negative equity created by the debtor's trade-in is not part of the "purchase money obligation."

b. *Amount of Capital One's Secured Claim Under "Dual Status" Rule*

Having determined which portions of the amount financed are purchase money and non-purchase money, the court must now determine the amount of Capital One's secured claim. The Eastern District of North Carolina adopted the "dual status" rule in In re Price. Under the dual status rule, a creditor's security interest may be "'a purchase money security interest to some

extent and a non-purchase money security interest to some extent.'" Id. (quoting N.C. Gen. Stat. § 25-103, Official Comment 1). The portion of the claim that is determined to be non-purchase money does not get the protection of the hanging paragraph and may be treated as unsecured. In re Conyers, 2007 WL 3244106 at *6 (Bankr. M.D.N.C. Nov. 2, 2007). The portion of the claim that is purchase money is treated as secured. Id. Applying this rule to the instant case, Capital One has a secured claim of $22,730.35.

*c. Allocation of Pre-Petition Payments to Purchase Money and Non-Purchase Money*

The final determination before the court is the allocation of pre-petition payments made by the debtor to the purchase money and non-purchase money portions of the claim. The court in Price specified that "the most appropriate and realistic default method of allocating payments under the dual status rule is to allocate them proportionately, according to the ratio of the non-purchase money portion of the total amount financed." Price at 8. Here, of the $25,340.58 that the debtor financed, the purchase money portion is $22,730.35. Therefore, the ratio to be used in allocating pre-petition payments is as follows: 10.30% of pre-petition payments should be applied to reduce the unsecured portion of Capital One's claim and 89.70% of the pre- petition payments should be applied to reduce the secured portion of the debtor's claim. Because the court lacks sufficient information to calculate this amount, the trustee is directed to use these ratios in allocating the pre-petition payments made by the debtor to determine the purchase money portion of Capital One's claim when the debtor's petition was filed August 1, 2007.

## CONCLUSION

Based on the foregoing, the court finds that Capital One has a secured claim of $22,730.35 based on the rule of the Section 1325's "hanging paragraph" and the District Court

for the Eastern District of North Carolina in <u>In re Price</u>.  However, the trustee is to reduce this amount as instructed in Part C above, by multiplying the amount of the debtor's pre-petition payments to Capital One by 89.70% and subtracting that amount from $22,730.35.

"**END OF DOCUMENT**"